# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

WILLIAM S. SCOTT,

                          Plaintiff,

-vs-                                                    Case No.  5:10-cv-111-FtM-36SPC

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY
                          Defendant.
_____

## <u>ORDER</u>

This matter comes before the Court on the Plaintiff William S. Scott's Complaint Seeking

Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the

Plaintiff's Claim for Disability Insurance and Supplemental Security Income (Doc. #1) filed on

August 5, 2009 in the Middle District of Florida, Ocala Division.   The Plaintiff filed his

Memorandum of Law in Support of the Complaint (Doc. # 19) on October 21, 2010.   The

Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc.

#22) on January 20, 2011.   Thus, the Motion is ripe for review.   The Order approving consent to

jurisdiction by United States Magistrate Judge (Doc. #14) was entered on August 2, 2010.

The Undersigned has reviewed the record, including a transcript of the proceedings before

the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings

and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed an application for child's insurance benefits, disability insurance, and supplemental security income benefits on March 7, 2006.  (Tr. 16).  The claim was denied initially and upon reconsideration.  After a hearing on December 10, 2008, an administrative law judge (ALJ) issued a hearing decision denying Plaintiff's claim on August 5, 2009, finding the Plaintiff retained the residual functional capacity ("RFC") to perform heavy work, but was limited to simple, routine tasks and simple work-related decisions, not performed in a quota system, but within the sight and hearing of a lead worker or supervisor.  (Tr. 20).  The Plaintiff requested review from the Appeals Council, which was denied.  (Tr. 9).

### *Plaintiff's History*

The Plaintiff was born on May 15, 1978, making him thirty (30) years old at the time of the hearing.  (Tr. 16, 304).  The Plaintiff has a limited education and no past relevant work.  (Tr. 24).  The Plaintiff alleges disability beginning on October 1, 1997.  (Tr. 18).

### *Medical and Psychological History*

At the age of eleven, Mr. Scott was evaluated by Dr. Heather McIntosh, a psychologist, for intelligence testing at the request of Morning Star School. (Tr. 237-39).  WISCR testing revealed a verbal IQ score of 60, a performance IQ score of 75 and a full scale IQ score of 67. These scores were in the range of mentally deficient classifications and at the first percentile compared to age related peers. He tested at the age equivalent of grade 1.1 in math, grade 1.6 in reading, grade 1.4 in spelling and grade 1.3 on battery composite and had six errors on the Koppitz test which corresponded to an age equivalent of seven to seven and a half years.

His arithmetic ability was limited to basic addition and subtraction and he made careless mistakes. He showed poor word attack. His visual motor ability was below what would be considered typical performance of a child his age. He obtained age-standard scores in math, reading, and spelling which were considered to be in the lower extreme.  It was determined he would benefit from a slow-paced, highly repetitive approach to material presentation and needed to be provided the opportunity for review and repetition of newly learned material.

In January 2006, as an adult Scott was evaluated at the Center for Independent Living for Vocational Evaluation services. (Tr. 154-58). He had a history of dyslexia and had difficulty with reading comprehension and spelling. He only completed ninth grade and worked for six months as a grocery store bagger.  During this time, he had difficulty with co-workers and with multiple managers giving him tasks. He did not know which task to do first. He underwent the Kaufman brief intelligence test and obtained a verbal score of 69, nonverbal score of 57, and an IQ composite of 58, which were all in the lower extreme.  Scott underwent a Kaufman functional academic skills test which revealed he was in the lower extreme mild deficit range.  He had a limited education and vocational experience and would benefit from job coaching to ensure he learned the specific tasks of his position the way his employer wished. He would need assistance in filling out job applications and interviewing as well as short-term job coaching.  He would need to have information read to him.  During this evaluation, Scott reported that his daily activities included driving his grandmother to the store and "working on computers, both fixing hardware and learning programming."  (Tr. 154).

The evaluators found the Scott could tolerate a full day of work and was employable full-time.  They also noted that he stayed on task throughout the evaluation and arrived early to both

appointments.  (Tr. 158).  The evaluations noted that Scott worked "best when working with a few people on a regular basis and having one direct supervisor."  (Tr. 157).

On July 2, 2006, Dr. Colleen Character, a psychologist, examined Scott at the request of the state disability office. (Tr. 159-62). He reported leaving school at age fourteen due to lack of progress at a school for special needs. He reported working as a bagger but was unable to perform the functions of the job.  Examination revealed he had a speech impediment.  His speech was difficult to understand at times. Scores on the digit span subtest of the WAIS-III suggested below average immediate memory skills and below average common sense reasoning skills and judgment. On the WAIS-III, he obtained a verbal IQ of 68, a performance IQ of 74, and a full scale of 68, which placed him in the mental retardation mild range or the second percentile of intellectual functioning for his peer group.  He did not appear to be cognitively capable of independent management of funds. Id.

Scott was then examined on February 15, 2006 by Dr. Steven Weiss, a psychologist, at the request of the Division of Vocational Rehabilitation. (Tr. 181-86).  Examination revealed Scott was shy and reserved and appeared to have low self-confidence and rarely volunteered information.  He had difficulty expressing himself and was slow to answer questions about his personal life.  (Tr. 181).  He seemed embarrassed when unable to answer questions to his satisfaction and he exhibited no discernable change in approach on difficult items.  He might have persisted a bit too long in attempting to solve these problems.  He reported difficulty with reading large words and had difficulty understanding their meanings.  He never mastered division and had difficulty with spelling.  Scott was concrete and somewhat immature in his expressions of like and dislikes and had difficulty summoning up appropriate words.  He hesitated a great deal before responding.  Insight

and judgment were characterized by concrete thinking, a low level of problems solving skills, and knowledge of right and wrong.  (Tr. 182).  Scott reported daily activities including caring for his ailing grandfather and helping a friend install computers, where he followed his friend's instructions. (Tr. 182).  Scott also reported that he enjoyed listening to and repairing police scanners.  (Tr. 182).

Because his reading level fell below the third grade, and he was currently 27 years and 9 months, he could not be administered the MMPI.  He underwent WAIS-III testing and received a verbal IQ of 72, performance IQ of 74 and full scale IQ of 70 which falls within the borderline or "very low" classification.  He received a verbal comprehension index of 74 and a perceptual organization index of 78 which fell within the borderline or very low classification. His speech difficulties may have served to somewhat lower his performance on some of the subtests contributing to the verbal IQ.  (Tr. 183).

Scott underwent the Wide Range Achievement Test and scored a 53 on the reading subtest and a score of 57 on the spelling subtest. (Tr. 184). These scores both fell within the deficient classification and a grade equivalent of "below third." He received a score of 56 on the arithmetic subtests which fell within the deficient classification and revealed a grade equivalent of "end of third." His performance in the achievement area indicated significant difficulties in reading, spelling, and mathematics, however due to his borderline level of intelligence, one could not classify these deficiencies as learning disabilities.  (Tr. 184).  On the Wechsler Memory Scale, he scored an 83 which fell within the low average range and his deficient performance on the memory passage subtest indicative that the verbal contextual memory was compromised.  (Tr. 185).  It was noted that he would function best in a hands-on setting with a patient supervisor who could give him concrete directions and monitor his work closely, so long as his job description did not exceed  his intellectual

limitations.  (Tr. 186).  He would function best in an assistant role and he appeared to have limited socialization experience.  The prognosis for eventual employment under these limited conditions was guardedly optimistic with close supervision at a work site.  He was diagnosed with pervasive developmental disorder (provisional), borderline intellectual functioning, personality disorder, learning difficulties in math, spelling, reading, and borderline IQ.  He was assigned a GAF of 65.  Id.

On January 11, 2007, Dr. James Levasseur, an agency reviewing consultant, completed a mental residual functional capacity (RFC) form on July 26, 2006.  (Tr. 163-66).  Dr. Levasseur found that Scott had the mental RFC to follow simple instructions, get along with others, demonstrate a cooperative attitude, make basic work decisions, and adequately adapt to work environments. (Tr. 165).  Dr. Levasseur further noted that Scott had some reduction in intellect that would limit his ability to complete complex tasks and some reduction in adaption that would limit him to work in environments of low social demand. (Tr. 165).

On January 11, 2007, Dr. Stephen Wise, another agency reviewer, completed a mental RFC form.  (Tr. 201-03).  Dr. Wise opined that Scott had the mental RFC to perform simple tasks and further stated he would benefit from extra supervision.  (Tr. 203).  He also found that Scott could understand and remember basic tasks, carry out simple tasks, maintain concentration and attention for routine, uncomplicated tasks for two-hour periods during an eight-hour workday, complete a normal workweek without excessive interruptions from psychologically-based symptoms, relate to supervisors and coworkers, and adapt to simple changes.  (Tr. 203).  Dr. Wise also found Scott could avoid work hazards.  (Tr. 203).

On a Function Report dated April 5, 2006, Scott stated that he lived with his grandparents and his daily activities included caring for a dog, going to town, visiting his parents, and using a

computer. (Tr. 122-24). Scott drove a car and shopped in stores and online. (Tr. 125). Scott testified at the hearing that he lived in an apartment behind his parents' home. (Tr. 305).

On July 1, 2008, Scott was treated at The Centers. (Tr. 247-54). He reported recurrent depression exacerbated by his grandfather's death. He was stressed out and unable to cope with the loss and daily life and reported difficulty sleeping over the past six months and difficulty dealing with the death of his grandfather. He had no friends and felt sad, lonely, fearful, and confused. He felt he could not work, had slow motor skills, and was forgetful and easily stressed. Examination revealed his mood was anxious and his affect constricted. He reported right leg pain especially at night which made it hard to stand or fall asleep. He was unable to handle being told what to do or handle too many tasks and he would sit and cry for his grandfather. He described a loss of interest in all activities and had poor eating habits. Scott was diagnosed with major depressive disorder and was assigned a GAF of 50. He was referred for psychiatric management. Id. The evaluator noted that Scott's "attorney referred him [there] to help speed up the SSI disability application . . . ." (Tr. 252).

Dr. Sonal Parikh (treating psychiatrist) treated Scott for anxiety and depression between the dates of August 2008 through October 2008. (Tr. 255-57). Examination revealed he became anxious when asked questions and sat on the edge of his chair. His affect was constricted and his formal judgment was poor. He was diagnosed with adjustment disorder with mixed emotions, anxiety disorder, history of learning disabilities, mental retardation, and obesity. He was assigned a GAF of 48. He was referred to the health department for control of his blood pressure and was started on Celexa, Trazadone, and referred to Key training centers. Id. On October 7, 2008, he reported slight improvement in mood with medications. (Tr. 257). He was told to continue Celexa and increase his Trazadone dose.

Scott's father testified that Scott attended a school "for special education people" then received private tutoring after withdrawing.  (Tr. 310-11).  Scott's father stated that he "was not up to speed that they figured wanted to be done" at the grocery store, and therefore he was terminated.  (Tr. 314).  He also stated that Scott spent most days on his computer or watching television, and he cared for a dog and his grandmother.  (Tr. 317-18).  Scott's father reported that Scott did not interact well with others and was treated for "deep depression" and "blood pressure," but that Scott  had no other physical impairments.  (Tr. 319-20).

### Administrative Law Judge's Decision

Upon consideration of the record, the ALJ found that the Plaintiff had not attained age 22 as of October 1, 1997, the amended alleged onset date. (Tr. 18).   The ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 1, 1997, the amended alleged onset date. (Tr. 18).  The ALJ also found that the Plaintiff had the following severe impairments: mild mental retardation and illiteracy (possible learning disorder).  (Tr. 19).  However, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19).  The ALJ further determined that the Plaintiff had the residual functional capacity to perform heavy work as defined in Social Security regulations: limited to simple, routine tasks and simple work-related decisions, not performed in a quota system but within the sight and hearing of a lead worker or supervisor.  (Tr. 20).  The ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (Tr. 24).   Finally, the ALJ found that the Plaintiff was under  no disability, as defined in the Social Security Act, from October 1, 1997, through the date of the decision.  (Tr. 24).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
*Step 1*.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
*Step 2*.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
*Step 3*.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
*Step 4*.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
*Step 5*.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505, 404.1511.

The Plaintiff argues the ALJ erred as follows: (1) he failed to properly consider the opinion of Dr. Weiss; (2) he failed to adequately address plaintiff's limitations in the areas of concentration, persistence, and pace; (3) he failed to apply the correct analysis for evaluating the application of

Listing 12.05C.  The Commissioner argues that substantial evidence supports the decision of ALJ Abruzzo.

### *(1) Whether the ALJ Properly Considered the Opinion of Dr. Weiss*

An ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [this court] to conclude that [the ALJ] considered [the] medical condition as a whole.'"  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)(quotation omitted)(second alteration in original).

In this case, the ALJ stated that  Dr. Steven Weiss "conducted a consultative psychological evaluation on February 15, 2006" at the request of the Division of Vocational Rehabilitation.  (Tr. 22).  This statement, referencing a one-time evaluation, necessarily implies that Dr. Weiss was an examining physician, not a treating physician.  Generally, an examining physician's opinion is given more weight than a non-examining physician, and even more weight is generally given to a treating physician.  See 20 C.F.R. § 404.1527(d)(1)-(2).

The Plaintiff argues that the ALJ failed to assign the weight given to Dr. Weiss's opinion.  Dr. Weiss's opinion was that the Plaintiff "would function best in a 'hands-on' setting with a patient supervisor who can give him concrete directions and monitor his work closely."  (Tr. 186).

The ALJ's findings in the RFC regarding the Plaintiff's ability to perform work "limited to simple, routine tasks and simple work-related decisions, not performed in a quota system but within the sight and hearing of a lead worker or supervisor" encompass Dr. Weiss's opinion.  (Tr. 20).

Indeed, the description given by Dr. Weiss of the Plaintiff's work limitations are essentially restated by the ALJ. Therefore, the ALJ not only credited the opinion of Dr. Weiss, he also adopted his opinion. Further, while the ALJ's discussion of Dr. Weiss's opinion may not have been as comprehensive and exhaustive as it could have been, the ALJ did discuss in detail Dr. Weiss's notes and include a corresponding limitation in his RFC finding. (Tr. 22). The ALJ noted the Plaintiff's history and activities of daily living as reported to Dr. Weiss, the results of an IQ test Dr. Weiss administered, and his conclusion regarding Scott's need for supervision. (Tr. 22). Thus, it is evident that the ALJ discharged his duty to consider the evidence. (Tr. 22).

Also, any argument concerning the ALJ's success or failure to specifically assign any weight to Dr. Weiss's opinion is not well taken because Dr. Weiss is a one-time examiner and a non-treating physician and his opinion is consistent with the ALJ's decision. See Diorio v. Heckler, 721 F. 2d 726, 728 (11th Cir. 1983) (finding harmless the ALJ's mischaracterization of the claimant's past work because the error did not contradict the ALJ's ultimate findings), see also Shaw v. Astrue, No. 09-16020, 2010 WL 3191763 at *2 (11th Cir. 2010) (finding no reversible error when RFC finding was not inconsistent with doctor's opinion in a case where ALJ did not assign specific weight to non-treating examining physician's opinion or specifically address physician's opinion regarding claimant's ability to interact with supervisors and handle stress).

As such, the Plaintiff's request for remand based upon a lack of assignment of weight to Dr. Weiss's opinion, as well as the ALJ's alleged failure to credit the opinion of Dr. Weiss and failure to explain the rationale thereto is due to be denied.

*(2) Whether the ALJ's RFC Finding Adequately Addressed Plaintiff's Limitations in the Areas of Concentration, Persistence, and Pace*

In order for a vocational expert's testimony to constitute substantial evidence, the hypothetical questions posed to the vocational expert need not include all of a claimant's symptoms, but they must include "all of the claimant's impairments." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007).  Several circuits have held that a hypothetical question posed to a vocational expert must specifically account for documented limitations of "concentration, persistence, and pace." Richter v. Comm'r of Soc. Sec. Admin., 379 Fed. Appx. 959 (11th Cir. 2010) (unpublished).  The courts that have adopted this requirement have "rejected the argument . . . that an ALJ generally accounts for a claimant's deficiencies in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks or unskilled work." Id. (citations omitted).

In the instant case, the ALJ specified that the limitations on the Plaintiff constitute work not "performed in a quota system but within the sight and hearing of a lead worker or supervisor." (Tr. 20).  Although the Plaintiff contends that the limitations posed by the ALJ are the equivalent of mere unskilled work and therefore do not specifically take into account deficiencies in concentration, persistence, and pace, this clearly is not the case.  Even assuming for the sake of argument that work not performed in a quota system is the equivalent of unskilled work, the fact remains that the ALJ also added the limitation of the work being performed "within the sight and hearing of a lead worker or supervisor."  (Tr. 20).  The combination of the these two limitations accounts for any deficiencies in the Plaintiff's concentration, persistence, and pace in that close supervision implicates concentration and persistence and non-quota work implicates pace. See Smith v. Halter, 307 F.3d 377, 387-89 (6th Cir. 2001) (holding that a limitation to jobs that are "routine and low stress, and do not involve intense

interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" encompassed limitations in the areas of concentration, persistence, and pace).

Further, the ALJ noted the Plaintiff could drive a car, and "even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions . . . ." (Tr. 21).  Thus, though the Plaintiff demonstrated that he was capable of activities that required concentration, the ALJ still translated the Agency non-examining reviewers' indication that Plaintiff was moderately limited in the area of concentration, persistence, and pace into concrete RFC restrictions that the Plaintiff needed a non-quota environment and direct supervision. (Tr. 20).  In specifying that the limitations on the Plaintiff constitute work not "performed in a quota system but within the sight and hearing of a lead worker or supervisor," the ALJ implicitly agreed with the Plaintiff's assertion that the Plaintiff's "capacity is not broad enough to do all unskilled occupations." (Tr. 20, Pl. Br. 16).  Thus, the ALJ's finding did adequately address the Plaintiff's limitations in the areas of concentration, persistence, and pace, is based on substantial evidence in the record, and is affirmed.

### (3) Whether the ALJ Erred in the Application of Listing 12.05C

The Plaintiff contends that the ALJ did not fully apply Listing 12.05C and that this is error that requires remand.  Under Listing 12.05C, a claimant is deemed disabled if he has: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05C.  The key question then is whether substantial evidence exists to support the ALJ's conclusion that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, §

12.05C.  Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Anderson v. Schweiker, 651 F.2d 306, 308 (5th Cir. 1981).

The first prong of 12.05C requires a "valid verbal, performance, or full scale IQ of 60 through 70 . . . . " 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05C.  Since the Plaintiff was found to have a full scale IQ of 68, the first prong of 12.05C is met.

The second prong of 12.05C closely tracks the definition of severe impairment in section 404.1520(c), which states: "If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  Section 404.1520(c).  Therefore, to meet the second prong of 12.05C the Plaintiff must have a severe impairment.  More specifically, in applying section 12.05C, the ALJ must determine whether the severe impairments, if any, constitute "additional and significant work-related limitations of function." 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05C. The regulations do not define these terms, but they do define an impairment as non-severe "if it does not significantly affect your physical or mental abilities to do basic work activities."  20 C.F.R. § 404.1521.  In analyzing the requirements of 12.05C, the ALJ need not explicitly articulate the analysis. Rather, a 12.05C finding can be found to be implicit in the ALJ's decision.  See Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) ("There may be an implied finding that a claimant does not meet a listing.").

In this case, the Plaintiff claims that the ALJ did not credit the diagnoses of the three mental health professionals that examined the Plaintiff and found additional mental impairments.  The ALJ, however, thoroughly discussed the evidence concerning the Plaintiff's mental condition and the evidence does not indicate that the Plaintiff's impairments met or equaled Listing 12.05C.  It must be

noted that 12.05C requires a mental impairment that imposes "an additional and significant work-related limitation of function."  Section 404.1520(c).

The ALJ stated:

> [plaintiff] has moderate restrictions in activities of daily living from a mental standpoint. He is able to complete personal care functions, chores, make purchases, and drive a car.  He has mild social limitations.  He was able to present with a normal appearance, cooperate, carry on a normal conversation, get along with people and does not demonstrate extremes in behavior.  He has moderate functional limitations in concentration, persistence and pace.  He alleged some reductions in concentration, memory, and understanding, all of which were plausible but he was able to drive, read on a limited basis, demonstrate adequate concentration and memory at a consultative evaluation by Dr. Character.  He was not able to complete complex tasks but retained the ability to complete simple tasks.

(Tr. 19-20).  In concluding that the Plaintiff "retained the ability to complete simple tasks," the ALJ implicitly found that the Plaintiff's impairments were not "additional and significant work-related limitation of function" thus addressing the second prong of 12.05C and finding that the second prong was not met.  As such, substantial evidence supports the ALJ's finding that the Plaintiff failed to prove that he met or equaled any listing, including Listing 12.05C.

Accordingly, it is now

**ORDERED:**

The final decision of the Commissioner is **AFFIRMED.**  The Clerk of the Court is hereby directed to enter judgment affirming the decision of the Commissioner and to thereafter close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of March, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-16-